*T. R. Perry*, contra.

---

### 601. SYKES *v.* SUTTON.

The disconnected instructions taken from the charge, when considered with the charge as a whole, contain no material error.   The evidence was in conflict, and we can not say the trial judge abused his discretion in refusing a new trial.

Attachment, from city court of Sylvester—Judge Park.   May 17, 1907.

Submitted October 30,—Decided December 9, 1907.
*Payton & Hay,* for plaintiff in error.
*Perry & Williamson,* contra.

HILL, C. J.   Sutton sued Sykes for $75 "boot" in a horse swap.. Sykes made two defenses:   (1) that the trade was not to be consummated until he had tried Sutton's horse and was satisfied; and that he had tried the horse and was not satisfied, as he found that. it was lame; (2) that Sutton's horse was unsound when the swap was made, and was known to Sutton to be unsound.   Both of these defenses were vigorously combatted by Sutton.   There was direct conflict in the testimony of the particeps dramatis, and some conflict in the respective corroborating testimony.   Sykes insisted that the horse which he got from Sutton in exchange for a sound and serviceable horse was actually lame when the exchange was. made, and that the lameness was known to Sutton, and it so rapidly increased in severity that in a few months the horse, when he laid. down to rest (which was very frequently), could "not get up again without assistance."   Sutton insisted that the horse he exchanged. for Sykes's horse was a steed of splendid mettle and qualities, was. perfectly sound, with no indication of lameness, but had been driven too fast and furiously by Sykes's pater, in his many electioneering tours throughout Worth county while canvassing for votes, and this hard use had caused and aggravated the lameness of the horse.   The elder Sykes admitted the use of the horse, but denied its severity, contending that to properly canvass for votes, the driving must be slow and the stops frequent, in order to give full opportunity "to talk to the voters."   All of the various conflicts. in the evidence were settled by the jury in favor of the plaintiff.

We have read with much interest and attention the evidence in the record, and we must admit that we are not fully in accord with the jury in our conclusion from the facts.   But the fairness of a horse swap is peculiarly a question for a jury of the vicinage. The character and abilities of the respective "swappers," as well as. the temptations inherent in such transactions, and to what extent excusable, are largely ethical questions, far better understood by the jurors on the ground than by reviewing courts at a distance. To our uninitiated mind it seems that the old horse trader with ten years' experience in his special line got somewhat the best of the youthful novice.   At the conclusion, the old trader had both

horses, and a judgment against the adolescent novice for $44.20 principal, interest, and costs. This result evinces great skill and finesse on the part of the experienced client and his able attorneys. It is a little puzzling to those who do not understand the mysteries of horse trades and jury trials. But the charge of the court in the main was fair, accurate, and comprehensive, clearly covering all the material issues in the case. The disconnected excerpts, when considered in connection with the entire charge, contain no serious or harmful error. This court will not have the judicial temerity to permit its conclusion to crystalize into judicial opinion at variance with that of the jury on the facts in connection with a horse trade, about which they were, by reason of propinquity to the parties and witnesses and to the scene of action, the better judges. *Judgment affirmed.*